James TRACY, William Adams, Robert Arnold, Arthur Betsch, Santos Cepeda, Douglas Coleman, Harold Gonzalez, Lennell Howard, Elliot Hunt, Billy Little, Larry Moore, Robert Oakley, Emanual Ordine, Jr., Larry Pleasant, George Reed, Anthony Repetti, Cordell Robinson, William Rodriguez, Dennis Soares, Michael Thomas, and John Turrisi, on behalf of themselves and all others similarly situated, Appellees,

v.

Dominick SALAMACK, Superintendent, Bayview Correctional Facility, Captain Hylan T. Sperbeck, Correction Officer, Bayview Correctional Facility and Benjamin Ward, Commissioner, Department of Correctional Services, State of New York, Appellants.

No. 578, Docket 77–2141.

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1977.

Decided March 7, 1978.

As Amended April 6, 1978.

Kevin J. McKay, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, Asst. Atty. Gen., New York City, of counsel), for appellants.

Susan N. Herman, Prisoners' Legal Services, New York City (Pierce Gerety, Jr., New York City, of counsel), for appellees.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BARTELS, District Judge.*

PER CURIAM:

This appeal is from an order of the United States District Court for the Southern District of New York, Morris E. Lasker, Judge, granting appellees' motion for a preliminary injunction and ordering reinstatement of members of the plaintiff class [1] in the temporary release program instituted by the New York State correctional system in 1969,[2] *Tracy v. Salamack*, 440 F.Supp. 930 (S.D.N.Y. 1977) (mem.), and delineating the circumstances under which removal would be proper after a Due Process hearing. *Tracy v. Salamack*, 440 F.Supp. 930, No. 77 Civ. 3937 (S.D.N.Y., dated Nov. 7, 1977).

Under the statutory scheme in effect before September 1, 1977, any inmate within one year of eligibility for parole could apply for participation in the program.[3] Each of the 140 original members of the plaintiff class had received approval to participate in the program prior to August, 1977, and many were already doing so. The underlying statute was amended in July, 1977, effective September 1, 1977, (a) to provide that no person otherwise eligible [4] who is under sentence for certain violent crimes [5]

---

* Of the Eastern District of New York, sitting by designation.

1. Pursuant to a suggestion of the district court to avoid delay, no motion for certification of the class was made, but appellants agreed to afford any relief granted to all members of the class as defined. The class originally consisted of the 140 persons who were removed from the temporary release program in late August, 1977. By the time briefs were submitted to this court, the class had dwindled to 77 due to parole releases and the district court's exclusion from its order of inmates convicted of escaping and of inmates whose next parole board appearance was more than one year away. Brief for Appellants at 12.

2. N.Y. Correc. Law §§ 851–61 (McKinney Supp. 1977–78).

3. The statute provided:
"Eligible inmate" means a person confined in an institution who is eligible for release on parole or who will become eligible for release on parole or conditional release within one year. In the case of a person serving an indeterminate sentence of imprisonment imposed pursuant to the penal law in effect after September one, nineteen hundred sixty-seven, for the purposes of this article parole eligibility shall be upon the expiration of the minimum period of imprisonment fixed by the court or where the court has not fixed any period, after service of the minimum period fixed by the state board of parole. This language remains unchanged in the 1977 amendments. *Id.* § 851(2).

4. To be "otherwise eligible" an inmate must be within one year of his next scheduled appearance before the state parole board and not have been convicted of any escape or absconding offense. *Id.*

5. The crimes which are given special treatment under the statute are those involving (a) infliction of serious physical injury upon another,

may participate in the program "without the written approval of the commissioner," and (b) to require the commissioner to "promulgate regulations" for the guidance of temporary release committees at each institution in effectuating the statutory mandate.[6] No such regulations were formulated. Nonetheless, in August, 1977, the Department of Correctional Services conducted a four-step screening process [7] of the 824 temporary release participants, resulting in removal of the 140 original members of appellees' class.[8] The inmates then brought this civil rights action and moved for a preliminary injunction requiring the Department to reinstate them and to grant them hearings before future changes in their status could be made.

Judge Lasker concluded that the Due Process Clause protects appellees against removal from the program without a prior hearing. He first found that appellees had suffered a "grievous loss" of a liberty interest by analogizing temporary release to other release programs which have been held to merit Due Process protection.[9] *Tracy v.*

---

(b) a forcible sex offense, and (c) the use or threatened use of a deadly weapon. *Id.*

6. The amendment retains the eligibility requirements of the prior version verbatim, *see* note 3 *supra*, and then imposes the above described additional eligibility conditions as follows:

If an inmate is denied release on parole, such inmate shall not be deemed an eligible inmate until he is within one year of his or her next scheduled appearance before the state parole board. No person convicted of any escape or absconding offense defined in article two hundred five of the penal law shall be eligible for temporary release. Notwithstanding the foregoing, no person who is an otherwise eligible inmate who is under sentence for a crime involving: (a) infliction of serious physical injury upon another as defined in the penal law, (b) a sex offense involving forcible compulsion, or (c) any other offense involving the use or threatened use of a deadly weapon may participate in a temporary release program without the written approval of the commissioner. The commissioner shall promulgate regulations giving direction to the temporary release committee at each institution in order to aid such committees in carrying out this mandate.

*Id.* (footnote omitted).

7. (1) The Temporary Release staff reviewed summaries on all participants and made preliminary recommendations, (2) each case was then submitted to a three-member panel for further review, (3) recommendations were received from the superintendents at each temporary release program facility, and (4) the central office conducted an overall review to reach a final determination in each case. This review was conducted "to comply with the new temporary release legislation . . . to determine whether [the participants] were still eligible." Brief for Appellants at 9.

8. Appellants explain that
[w]hile several prisoners were automatically barred from the program because they were convicted of an escape or absconding offense, the remaining prisoners who needed the express approval of the Commissioner were removed because the Commissioner found them to be a threat to the safety of the community and unsuitable to participate in the program.
*Id.* at 12.

9. He cited *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which established that certain Due Process requirements attach to parole revocations; *Zurak v. Regan*, 550 F.2d 86 (2d Cir.), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), which extended the principle to procedures for evaluating conditional release applications; and *Cardaropoli v. Norton*, 523 F.2d 990, 995 (2d Cir. 1975), which held that designation of an inmate as a "special offender" must be attended by rudimentary Due Process protections because it hindered the inmate's eligibility for participation in rehabilitative programs, including work release, and the change in status accompanying the designation was found to constitute a "grievous loss."

*Polizzi v. Sigler*, 564 F.2d 792 (8th Cir. 1977), and *Williams v. Ward*, 556 F.2d 1143, 1158 (2d Cir. 1977), also support the district court's conclusion. *But see Solomon v. Benson*, 563 F.2d 339 (7th Cir. 1977) (overruling *Holmes v. Board of Parole*, 541 F.2d 1243 (7th Cir. 1976), on the basis of *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) ); *but cf. Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (right of expectation in state law is necessary to trigger Due Process hearing prior to inter-prison transfers). We consider *Meachum v. Fano, supra*, inapplicable because there there the discretion to transfer under state law was absolute. 427 U.S. at 228, 96 S.Ct. 2532. Similarly, the Court in *Moody v. Daggett, supra*, 429 U.S. at 88 n.9, 96 S.Ct. 2532, noted that Congress had given federal prison officials complete discretion to control conditions of confinement. Here, the statutory language as well as the requirement to formulate regulations imposed on the commissioner indicate that discretion may be exercised only within established parameters.

*Salamack, supra,* 440 F.Supp. at 933–34. Relying on these precedents, *see* note 9 *supra,* the statute, prior official policy and practice in administering the program, and the wording of the form agreement signed by all participants, the district court further held that appellees had an "entitlement" in the temporary release program.[10] *Id.* at 934–36.

Thus far, we agree with Judge Lasker's findings of fact and conclusions of law. We also agree that a preliminary injunction to maintain the status quo of appellees' eligibility and participation was warranted. However, we cannot agree with the constraints which the district court imposed on the Department's authority to revoke these participation rights.

Judge Lasker held that "because plaintiffs' entitlement . . . came into existence only after a security check at the time each plaintiff was originally admitted to the program," *Tracy v. Salamack, supra,* No. 77 Civ. 3937, 440 F.Supp. at 936,

> none of the members of the plaintiff class may be removed from the temporary release program on allegations that their participation would constitute a threat to the security of the community except upon a showing, in accordance with due process, that a change of facts has occurred since the original determination permitting the inmate's participation, or the discovery by the defendants of new relevant facts which, although they existed at the time of the original decision, were unknown to the defendants through

no fault of their own and through no lack of reasonable diligence on their part. As to any inmate alleged to be a security risk under such circumstances, he shall be restored to the temporary release program unless within twenty days from the filing of this order the charges against him are heard and determined in accordance with the requirements for hearings at correctional institutions set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

*Id.* at 936.

We think this order goes too far by in effect prohibiting the State from changing its law regarding the eligibility of inmates already participating in the program.[11] An "entitlement" rooted in state law may well require an individualized procedural due process hearing before it may be revoked. It does not, however, have the substantive effect of prohibiting alteration of the underlying law which creates the entitlement. *See generally* Tribe, *Structural Due Process,* 10 Harv.C.R.–C.L.L.Rev. 269, 270–83, 301–08 (1975). We believe that a Due Process hearing is required before inmates already participating in or approved for the program may be removed. But the formula adopted by the district court—authorizing revocation of participation rights only when based on additional new facts or previously unknown facts indicating a threat to the community—is too rigid. Due Process requires a reevaluation by the commissioner of each participating inmate's eligibility in the light of the threat

10. Despite language of "privilege" in § 853(8) and in the form agreement signed by each enrolling participant, the district court concluded that an entitlement had been created because the reasonable expectation of the inmate was that he would be allowed to continue in the program absent misbehavior. Judge Lasker found that a "natural reading" of the agreement was that removal would result only from specified acts of misconduct. He also noted that since initiation of the program, temporary release status had been revoked only for misbehavior. In fact, Commissioner Lewis L. Douglas informed the court that prior to the amendments, both the department and the participants had assumed that participation would continue absent a specific violation.

11. Appellees argue that the New York statutory canon of construction against retroactivity, N.Y. Stats. Law § 52 (McKinney 1971), makes the 1977 amendments inapplicable to them. Section 52, however, provides for prospective application of amending legislation "unless the language of the statute clearly indicates that it shall receive a contrary interpretation." *Id.* We believe that the language of the amendments must be construed to apply to present participants in a temporary release program because it refers to "a person . . . who is under sentence," not distinguishing between present and future participants, and because the situation which the amendments were designed to correct was that of a convicted murderer, rapist or armed robber being too easily entitled to participate in work release.

that the inmate presents to the security of the community, N.Y. Correc. Law § 855(4) (McKinney Supp. 1977–78), taking into account his eligibility for parole, his past institutional record, the particular circumstances underlying the violent offense for which he is under sentence, and his previous temporary release record. There is, as we read the statute, no blanket requirement that the commissioner disapprove an otherwise eligible participant because he is serving for one of the specified offenses; [12] otherwise, the phrase "without the written approval of the commissioner" would be meaningless. What is required is the commissioner's independent, good faith evaluation [13]—a reviewable exercise of discretion—to take place following a *Wolff v. McDonnell* [14] Due Process hearing which, of course, must be accompanied by a written statement of reasons. *See* Friendly, "*Some Kind of Hearing*," 123 U.Pa.L.Rev. 1267, 1292 (1975).

Thus, we modify the preliminary injunction to read as set forth in the margin,[15] and as so modified affirm, without costs.

**12.** The fact that appellants conducted the screening process, *see* note 7 & accompanying text *supra*, rather than simply barring inmates under sentence for one of the violent crimes from participating in the program, is a strong indication that appellants themselves did not interpret the statute as automatically precluding such inmates from eligibility.

**13.** We express no opinion on whether the statute permits the commissioner to delegate this determination to individual institutional heads under appropriate regulations. On the record before us no such regulations have been adopted.

**14.** 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

**15.** [N]one of the members of the plaintiff class may be removed from the temporary release program on allegations that his participation would constitute a threat to the security of the community except upon finding, in accordance with due process, accompanied by a written statement of reasons, that such participation would constitute such a threat in the light of (a) his eligibility for parole, his past institutional record, the circumstances underlying the violent offense for which he is under sentence, and his previous temporary release record; or (b) the discovery by the defendants of new relevant facts which, although they existed at the time of the original decision, were unknown to the defendants through no fault of their own and through no lack of reasonable diligence on their part; or (c) a change of facts since the original determination permitting the inmate's participation. Any inmate alleged to be a security risk under such circumstances shall be restored to the temporary release program unless within 20 days from the filing of this order the charges against him are heard and determined in accordance with the requirements for hearings at correctional institutions set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

It is so ordered.