474 So.2d 758 (1985)
Ex parte Richard Mark ELLARD.
(re Richard Mark Ellard v. State of Alabama).
83-1352.
Supreme Court of Alabama.
July 3, 1985.
*759 Ralph I. Knowles, Jr., Tuscaloosa, and Ira A. Burnim, Montgomery, for petitioner.
Charles A. Graddick, Atty. Gen., and Joseph G.L. Marston, III, Asst. Atty. Gen., for respondent.
Frank D. McPhillips of Maynard, Cooper, Frierson, & Gale, Birmingham, for amicus curiae Johnny Wayne Wade.
MADDOX, Justice.
We issued the writ of certiorari in this case in order to review the Court of Criminal Appeals' decision, 474 So.2d 743, upholding the Board of Pardon and Parole's revocation of Richard Mark Ellard's parole. We affirm.
A complete statement of the facts is contained in the opinion of the Court of Criminal Appeals, but we set out a sufficient set of facts to support the reasons why we affirm.
Mark Ellard was incarcerated in the Alabama prison system pursuant to a life sentence for murder and a twenty-year sentence for assault with intent to murder. On December 8, 1980, parole officer Thomas Tate evaluated the social, criminal, and custodial record of Mark Ellard and recommended that he be paroled. The board met with Ellard on December 15, 1980, interviewed him, and later reviewed the parole board file. In addition to the parole evaluations and social histories made at the time of his sentencing, the file included reports on the nature of his crimes and his activities on escape in 1977, as well as documents from classification officers, work supervisors, and the warden of Holman Prison recommending that Ellard be paroled.
Based upon its investigations, evaluations, and interview, the board issued Ellard a certificate of parole. Additional factors established by petitioner's Ala.R. App.P. 39(k) statement shall be considered below in light of their relevance to the issues presented.
In the Court of Criminal Appeals' opinion, Judge Patterson, writing for the court, set forth a detailed history of the establishment of the Board of Pardons and Paroles. He also set forth the applicable law for reexamination of the grant of parole by administrative boards.
The critical questions raised in this petition are: (1) Did Ellard have a liberty interest? and (2) Could the parole board, based on the record in this case, revoke the parole?

I

Did Ellard have a liberty interest?
The Court of Criminal Appeals correctly determined that Alabama's parole statutes do not create a "liberty interest" that cannot be revoked. Andrus v. Lambert, 424 So.2d 5 (Ala.Crim.App.1982); Thomas v. Sellers, 691 F.2d 487 (11th Cir. 1982); Johnston v. Alabama Pardon and Parole Board, 530 F.Supp. 589 (M.D.Ala. 1982). In Thomas the Middle District held as follows:
"The Alabama statute like the Texas statute calls for discretionary rather than mandatory action on the part of the board. The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole as was found in Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)].
*760 When the statute is framed in discretionary terms there is not a liberty interest created."
Although Ellard did not have a constitutionally protected liberty interest, nevertheless, we recognize that Ellard was entitled to a due process hearing; here, however, as the Court of Criminal Appeals found, Ellard was accorded substantial procedural safeguards in accordance with the mandates of Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971).

II
Can a parole be revoked in the absence of a showing that the parolee violated a condition of his parole? There is a split of authority on this issue. In Ex parte Urbanowicz, 24 F.2d 574 (D.Kan.1928), the Court held that a parole granted to a United States prisoner could not be cancelled or rescinded except for some offense committed by him subsequent to the date of the parole which constituted a violation of the terms of the parole.
Courts have reached a contrary conclusion, however, under statutes which confer more extensive authority on the parole board or commission. In Johnson v. Walls, 185 Ga. 177, 194 S.E. 380 (1937), the Georgia Supreme Court held that the parole board did not exceed its power in revoking a parole when the prison commission which granted the parole mistakenly thought that the prisoner had served several months of his sentence instead of, in actuality, only two days of his sentence. See also In re Tobin, 130 Cal.App. 371, 20 P.2d 91 (1933).
This issue of whether a parole board can revoke a parole was addressed most recently in Tracy v. Salamack, 440 F.Supp. 930 (S.D.N.Y.1977), modified and affirmed, Tracy v. Salamack, 572 F.2d 393 (2d Cir. 1978).
The Tracy decision, although involving work release inmates and New York statutes, is strikingly similar to this case. We quote the second opinion in that case in its entirety for a complete understanding of the facts and the laws, omitting only the footnotes:
"This appeal is from an order of the United States District Court for the Southern District of New York, Morris E. Lasker, Judge, granting appellees' motion for a preliminary injunction and ordering reinstatement of members of the plaintiff class in the temporary release program instituted by the New York State correctional system in 1969. Tracy v. Salamack, 440 F.Supp. 930 (S.D.N.Y.1977) (mem.), and delineating the circumstances under which removal would be proper after a Due Process hearing. Tracy v. Salamack, 440 F.Supp. 930, No. 77 Civ. 3937 (S.D.N.Y., dated Nov. 7, 1977).
"Under the statutory scheme in effect before September 1, 1977, any inmate within one year of eligibility for parole could apply for participation in the program. Each of the 140 original members of the plaintiff class had received approval to participate in the program prior to August, 1977, and many were already doing so. The underlying statute was amended in July, 1977, effective September 1, 1977, (a) to provide that no person otherwise eligible who is under sentence for certain violent crimes may participate in the program `without the written approval of the commissioner,' and (b) to require the commission to `promulgate regulations' for the guidance of temporary release committees at each institution in effectuating the statutory mandate. No such regulations were formulated. Nonetheless, in August, 1977, the Department of Correctional Services conducted a four-step screening process of the 824 temporary release participants, resulting in removal of the 140 original members of appellees' class. The inmates then brought this civil rights action and moved for a preliminary injunction requiring the Department to reinstate them and to grant them hearings before future changes in their status could be made.
"Judge Lasker concluded that the Due Process Clause protects appellees *761 against removal from the program without a prior hearing. He first found that appellees had suffered a `grievous loss' of a liberty interest by analogizing temporary release to other release programs which have been held to merit Due Process protection. Tracy v. Salamack, supra, 440 F.Supp. at 933-34. Relying on these precedents, ... the statute, prior official policy and practice in administering the program, and the wording of the form agreement signed by all participants, the district court further held that appellees had an `entitlement' in the temporary release program. Id. at 934-36.
"Thus far, we agree with Judge Lasker's findings of fact and conclusions of law. We also agree that a preliminary injunction to maintain the status quo of appellees' eligibility and participation was warranted. However, we cannot agree with the constraints which the district court imposed on the Department's authority to revoke these participation rights.
"Judge Lasker held that `because plaintiffs' entitlement ... came into existence only after a security check at the time each plaintiff was originally admitted to the program,' Tracy v. Salamack, supra, No. 77 Civ. 3937, 440 F.Supp. at 936,
none of the members of the plaintiff class may be removed from the temporary release program on allegations that their participation would constitute a threat to the security of the community except upon a showing, in accordance with due process, that a change of facts has occurred since the original determination permitting the inmate's participation, or the discovery by the defendants of new relevant facts which, although they existed at the time of the original decision, were unknown to the defendants through no fault of their own and through no lack of reasonable diligence on their part. As to any inmate alleged to be a security risk under such circumstances, he shall be restored to the temporary release program unless within twenty days from the filing of this order the charges against him are heard and determined in accordance with the requirements for hearings at correctional institutions set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
Id. at 936.
"We think this order goes too far by in effect prohibiting the State from changing its law regarding the eligibility of inmates already participating in the program. An `entitlement' rooted in state law may well require an individualized procedural due process hearing before it may be revoked. It does not, however, have the substantive effect of prohibiting alteration of the underlying law which creates the entitlement. See generally Tribe, Structural Due Process, 10 Harv. C.R.-C.L.L.Rev. 269, 270-83, 301-08 (1975). We believe that a Due Process hearing is required before inmates already participating in or approved for the program may be removed. But the formula adopted by the district courtauthorizing revocation of participation rights only when based on additional new facts or previously unknown facts indicating a threat to the communityis too rigid. Due Process requires a reevaluation by the commissioner of each participating inmate's eligibility in the light of the threat that the inmate presents to the security of the community, N.Y.Correc. Law § 855(4) (McKinney Supp.1977-78), taking into account his eligibility for parole, his past institutional record, the particular circumstances underlying the violent offense for which he is under sentence, and his previous temporary release record. There is, as we read the statute, no blanket requirement that the commissioner disapprove an otherwise eligible participant because he is serving for one of the specified offenses; otherwise, the phrase `without the written approval of the commissioner' would be meaningless. What is required is the commissioner's independent, good faith evaluationa reviewable exercise of discretionto *762 take place following a Wolff v. McDonnell Due Process hearing which, of course, must be accompanied by a written statement of reasons. See Friendly, `Some Kind of Hearing,' 123 U.Pa.L.Rev. 1267, 1292 (1975).
"Thus, we modify the preliminary injunction to read as set forth in the margin, and as so modified affirm, without costs."
572 F.2d at 394-397.
The Second Circuit Court of Appeals modified the preliminary injunction issued by the district court to read as follows:
"[N]one of the members of the plaintiff class may be removed from the temporary release program on allegations that his participation would constitute a threat to the security of the community except upon finding, in accordance with due process, accompanied by a written statement of reasons, that such participation would constitute such a threat in the light of (a) his eligibility for parole, his past institutional record, the circumstances underlying the violent offense for which he is under sentence, and his previous temporary release record; or (b) the discovery by the defendants of new relevant facts which, although they existed at the time of the original decision, were unknown to the defendants through no fault of their own and through no lack of reasonable diligence on their part; or (c) a change of facts since the original determination permitting the inmate's participation."
572 F.2d at 397 (2d Cir.1978).
Although the Tracy court was interpreting New York statutes, we find that court's reasoning applicable to the situation at hand. In fact, in Tracy the Second Circuit found that New York amended its statutes to correct those situations in which "a convicted murderer, rapist or armed robber [was] too easily entitled to participate in work release." 572 F.2d at 396, n. 11.
The thrust of the Tracy decision, as we read it, is that a state can review a conditional release of a prisoner and revoke it if the prisoner is given a hearing accompanied by a written statement of reasons. Although not stated by the Tracy court, we believe the underlying rationale for the result reached there is that the public has an interest in protecting itself against the early or conditional release of prisoners who might pose a threat to the community. We recognize that in Tracy this public interest was spelled out in amendments to New York law governing work release inmates, but we do not believe that a parole board, like Alabama's, could not reexamine an inmate's past record and conclude that in granting parole it had failed to follow the public will, as expressed in the parole statutes.
We believe that a determination of whether a parole board can revoke a parole requires a balancing of the public interest against the interest of the prisoner in receiving the benefits of the parole granted to him. In balancing these interests, we must not, of course, be guided by public clamor or media interest, but by an application of the principles of law which delineate the public interest in granting paroles only to those found by the Board of Pardons and Paroles to be legally eligible for parole, and the prisoner's interest in being accorded his freedom if the Board in the exercise of its discretion determines that the prisoner is eligible. Here, there was great media interest and the attorney general, as the chief legal officer of the state, was of the opinion that Ellard should not have been paroled.
As we understand the opinion by the Second Circuit in Tracy, a board is not limited to a consideration of the events occurring after a parole is granted, but may reconsider the character of the offense and can reexamine the very basis on which parole was initially granted, and can determine that it did not follow the statutory scheme.
In Tracy, the prison commissioner was authorized to reexamine the record of work release inmates who were murderers, rapists, and robbers, and remove them from the program. The Court opined that "[d]ue *763 process requires a reevaluation by the commissioner of each participating inmate's eligibility in the light of the threat that the inmate presents to the security of the community,... taking into account his eligibility for parole, his past institutional record, the particular circumstances underlying the violent offense for which he is under sentence, and his previous temporary release record." 572 F.2d at 396-97.
The parole board is charged with the responsibility of determining who is eligible for parole. If it determines that it made a mistake in carrying out its duties, it is not powerless to rescind its actions, provided, of course, the prisoner is accorded his due process rights.
We hold that based upon the record before it and after a reexamination of all of the information, including the prisoner's eligibility for parole, his past institutional record, the circumstances underlying the violent offense for which he is under sentence, and his previous parole record, the board was authorized to determine that in the initial grant of parole, it failed to properly exercise its discretion in accordance with Alabama's statutory scheme; therefore, we find that the Board had authority to determine that an error was made on initial review of Ellard's eligibility and, after notice, hearing, and a reexamination of the pertinent facts, had the authority to revoke his parole. The judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and ADAMS, JJ., concur.
JONES, ALMON, EMBRY and BEATTY, JJ., dissent.
EMBRY, Justice (dissenting).
I respectfully dissent for the reasons set out below.

I
Initially, I am awestruck by the majority's incredible position that the powers of the Alabama Board of Pardons and Paroles under Code 1975, §§ 15-22-1, et seq., are to be interpreted by decisions of foreign courts, speaking to statutes enacted in foreign jurisdictions. With all due deference to New York, I fail to see how an interpretation of New York's temporary release program has any bearing on the ability of the Alabama Board of Pardons and Paroles to revoke a legally executed parole where the prisoner has already been released from custody. I would prefer to look to Alabama's statutory law.
Second, Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), leaves no doubt that, once released from prison, a parolee has a liberty interest which attaches, commanding a due process hearing before a revocation of that parole. Due process requires that a parolee be apprised of any violations of parole conditions before a hearing is held. In this case, Ellard was not notified of any violations, as there were none charged.

II
The writ of certiorari was issued in this case in order to review the Court of Criminal Appeals' decision upholding the Board of Pardons and Paroles' revocation of Richard Mark Ellard's parole. I would reverse.
The dispositive facts of this case are adequately set out in the opinion of the Court of Criminal Appeals. Additionally, petitioner properly submits an ARAP 39(k) statement, the pertinent provisions of which are summarized below.
Mark Ellard was incarcerated in the Alabama prison system pursuant to a life sentence for murder and a twenty year sentence for assault with intent to murder. On 8 December 1980, Parole Officer Thomas Tate evaluated the social, criminal, and custodial record of Mark Ellard and recommended that he be paroled. The Board met with Ellard on 15 December 1980, interviewed him, and later reviewed the Parole Board file. In addition to the parole evaluations and social histories made at the time of his sentencing, the file included reports on the nature of his crimes and his activities *764 on escape in 1977, as well as documents from classification officers, work supervisors, and the Warden of Holman Prison recommending that Ellard be paroled.
Based upon its investigations, evaluations, and interviews, the Board issued Ellard a Certificate of Parole. Additional factors established by petitioner's ARAP 39(k) statement shall be considered below in light of their relevance to the issues presented.
The essential issue presented by this case is whether the Board of Pardons and Paroles, upon reconsideration, may revoke a legally executed parole where the parolee has not violated any terms or conditions of that parole. To reach this issue, however, it is first necessary to determine whether the actions of the Board, in this case, constituted a legal issuance of Ellard's parole.
The Court of Criminal Appeals upheld the Board's revocation of Ellard's parole based on a finding that "certain substantial and legal evidence" pertaining to Ellard was not considered by the Board on its initial review. Therefore, the Court of Criminal Appeals concluded, under Code 1975, §§ 15-22-25 and 15-22-40, the Board's execution of Ellard's parole was null and void. In so finding, that court erred in its interpretation of the requirements of § 15-22-25.
Code 1975, § 15-22-25, provides:
"§ 15-22-25. Investigation and report on sentenced prisoner's social and criminal records.
"(a) As to each prisoner sentenced and received in the jails and prisons of the state of Alabama, it shall be the duty of the board of pardons and paroles, while the case is still recent, to cause to be obtained and filed information as complete as may be obtainable at that time with regard to each such prisoner. Such information shall include a complete statement of the crime for which he is then sentenced, the circumstances of such crime, the nature of his sentence, the court in which he was sentenced, the name of the judge and district attorney and copies of such probation reports as may have been made as well as reports as to the prisoner's social, physical, mental and psychiatric condition and history. It shall be the duty of the clerk of the court and of all probation officers and other appropriate officials to send such information as may be in their possession or under their control to the board upon request. The board shall also at that time obtain and file a copy of the complete criminal record of such prisoner that may exist. When all such existing available records have been assembled, they shall be presented to the board or to some officer designated by it, who shall determine whether any further investigation of such prisoner is necessary at that time and, if so, the nature of such investigation and the board shall thereupon order it to be made. Such investigation shall be made while the case is still recent, and the results of it with all other information shall be filed in the office of the board so as to be readily available when the parole of such prisoner is being considered.
"(b) The board shall not act on any application or case until a complete investigation of the prisoner's social and criminal record has been made by a parole officer and a written report thereof made a part of the prisoner's file."
Furthermore, the above section is supplemented by Code 1975, § 15-22-40, which states:
"§ 15-22-40. When pardon, etc., null and void.
"Any pardon, parole, remission of a fine or forfeiture or restoration of civil and political rights granted, ordered or made contrary to the provisions of this article shall be null and void and shall have no force or effect."
The State argues, and the Court of Criminal Appeals found, that the Board's action was null and void for failure to consider: (1) a psychological report on Ellard; (2) evidence of misconduct and criminal activity while Ellard was on escape in 1977; (3) *765 an escape attempt in 1971; and (4) considerable public opposition to Ellard's parole.
In Sellers v. Thompson, 452 So.2d 460 (Ala.1984), this court found that the requirements of Code 1975, § 15-22-25, did not necessitate the review of a psychiatric report on all inmates to be considered for parole.
In contrast to Sellers, a psychological report on Ellard was in existence. Nevertheless, I do not read Code 1975, § 15-22-25, to require the physical examination of every extant document relevant to a prospective parolee. To so hold would be both to require an omniscient Parole Board and to question the legality of every current and future parole.
On this point I note that the Board considered the report of Parole Officer Thomas Tate, dated 8 December 1980, which catalogs Ellard's criminal offenses, sentences, and prison record. Also before the Board, inter alia, were the supplementary reports compiled by Parole Officer Frank Fendley, of Oneonta, Alabama, in September 1972; the report of Parole Officer Winfred Smithson of Jefferson County, Alabama, in November 1972; and the report of Georgia Parole Investigator Lee Robinson on 26 May 1976. Additionally, Ellard's file included reports on the nature of his crimes and activities while on escape in 1977, as well as documents from classification officers, work supervisors, and the warden of Holman Prison. Accordingly, I find the Board considered a complete investigation of Ellard's social and criminal record before granting him parole, and thereby satisfied the provisions of Code 1975, § 15-22-25.
Regarding the public opposition to Ellard's parole, I opine that public opinion is neither required by law to be considered by the Board, nor relevant in any way to a proper parole determination. In fact, the very genesis of Code 1975, §§ 15-22-1, et seq., is the intention to isolate the pardon and parole process from political concerns. See "Report of the Special Legislative Committee Investigating Pardons and Paroles", Special Session (1951).
On alternative grounds, the Court of Criminal Appeals found that the Board lacks the statutory authority to parole an inmate from an Alabama sentence where that prisoner is subject to a foreign jurisdiction's detainer for custody and sentencing. Therefore, that court concluded, the Board's action in paroling Ellard to Georgia's custody was null and void, warranting revocation. That is an erroneous conclusion.
As aptly pointed out by the amicus curiae, such a conclusion would base an inmate's eligibility for parole not upon the criteria established by the legislature under Code 1975, § 15-22-26, but, rather, upon the terms of a sentence imposed by a court in a foreign jurisdiction. There is no support for this proposition.
To the contrary, Code 1975, § 15-22-36(a), affirmatively vests the following powers in the Board:
"(a) In all cases, except treason and impeachment and cases in which sentence of death is imposed and not commuted, as is provided by law, the board of pardons and paroles shall have the authority and power, after conviction and not otherwise, to grant pardons and paroles and to remit fines and forfeitures." (Emphasis added.)
Thus, unless there is a specific statutory exclusion, the Board has the authority to determine parole eligibility. Although the Court of Criminal Appeals implies to the contrary, Code 1975, § 15-22-27, does not exclude from parole consideration those inmates who may be subject to a detainer from another jurisdiction. That section merely grants to the Board certain powers in addition to its power to grant pardons and paroles. It provides that the Board may, at its option, transfer an inmate to another jurisdiction without paroling him from the sentence imposed by an Alabama court. It by no means prohibits or otherwise limits the Board from exercising its power to parole an inmate pursuant to Code 1975, § 15-22-36(a).
*766 In a collateral argument, the State contends Ellard was never paroled, but merely transferred to Georgia's custody pursuant to Code 1975, § 15-22-24(i). This is a frivolous argument, in that every relevant document, including a signed and sealed Certificate of Parole, indicates that Ellard was to be paroled, not transferred.
Based upon the foregoing, I would hold the petitioner was awarded a legally executed parole by the Board. It is undisputed that Ellard has not violated any of the conditions of that parole. Thus, I turn my attention to whether the Board, in the absence of any parole violations, is empowered to reconsider and revoke a legally executed parole after the inmate has been released.
There is no provision under Alabama law, the regulations of the Board, or the terms of petitioner's Certificate of Parole, authorizing the Board to reconsider a parole in the absence of any parole violation. Code 1975, § 15-22-32, provides for declaring a parolee delinquent, but only where "there is reasonable cause to believe that a prisoner who has been paroled has violated his parole." Furthermore, Code 1975, § 15-22-29, provides that a parolee may be liable for arrest and imprisonment after a violation of any parole condition. A statutory power to reopen and reconsider a parole after an inmate's release, however, can hardly be gleaned from the above code sections in the absence of any parole violations.
Neither do I find the Board vested with any inherent or implied power to reconsider paroles where no violation has occurred. Such a construction would be in clear abrogation of the restrictions set out in Code 1975, § 15-22-38, which states:
"The duties imposed upon the members of the board of pardons and paroles by this article are mandatory, and the limitations and restrictions on the powers of the board or the members thereof shall be strictly construed." (Emphasis added.)
In any event, for the Board to now reopen and reconsider Ellard's parole, in the absence of any parole violations, and without authority under statute, regulation, or Certificate of Parole conditions, would be an act so arbitrary and capricious as to violate the due process clause of the United States Constitution. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); See Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).
Accordingly, I would hold that the Board was without legal authority to reconsider a legally executed parole in the absence of any parole violations. Consequently, I would hold the Board's "revocation" of Ellard's parole is null and void. The judgment of the Court of Criminal Appeals is due to be reversed.
JONES, ALMON and BEATTY, JJ., concur.