Quentin HOLLINGSWORTH, Plaintiff,

v.

I.R. ROBINSON, Temporary Release Chairperson, Queensboro Correctional Facility, and Kenneth Dunham, Superintendent, Queensboro Correctional Facility, Defendants.

No. 90–CV–695 (JS).

United States District Court, E.D. New York.

Oct. 8, 1995.

Camhy Karlinsky & Stein by Martin E. Karlinsky, New York City, for plaintiff.

Attorney General of the State of New York by Jeanne Lahiff, and Edward J. Curtis, Jr. (on brief), Assistant Attorney Generals, New York City, for defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

Plaintiff Quentin Hollingsworth brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants deprived him of his pro-

cedural due process rights under the Fourteenth Amendment by removing him from the Temporary Work Release Program at the Queensboro Correctional Facility without providing him with prior notice or an opportunity to be heard. Pending before the Court is the defendants' motion to dismiss the plaintiff's amended complaint. For the reasons discussed herein, the defendants' motion is denied in its entirety.

## FACTUAL BACKGROUND

Plaintiff Quentin Hollingsworth was convicted in 1986 of the criminal sale of a controlled substance and sentenced to a term of four and one half to nine years imprisonment. The defendants in this action are I.R. Robinson, the Chairperson of the Temporary Release Program at the Queensboro Correctional Facility during the period in question, and Kenneth Dunham, the Superintendent of the Queensboro Correctional Facility during the same time period.

According to the amended complaint, while incarcerated, plaintiff applied for admission to the work release program under the Temporary Release Program [the "Work Release Program"] at the Arthur Kill Correctional Facility. On or about April 28, 1989, plaintiff was admitted into the Work Release Program, and thereafter was transferred to the Queensboro Correctional Facility.

Upon his acceptance into the Work Release Program, plaintiff searched for employment, and ultimately accepted a job with Ogden Allied Services Incorporation ["Ogden Allied"] as a custodial engineer at Pennsylvania Station in New York City. Plaintiff's salary for this job was $470.00 per week (approximately $11.75 per hour). Plaintiff commenced this position in May of 1989. At or about that same time, plaintiff was allowed weekend furloughs with his family.

Plaintiff alleges that in June of 1989, while on furlough, he was approached by Diana Hollingsworth, his estranged wife, who threatened to have the plaintiff "locked up on false charges." Several days later, on June 19, 1989, plaintiff filed a petition with the Family Court, Kings County, docket number 06430/89, seeking an order of protection against his estranged wife. *See* Pl's. Ex. A.

Plaintiff reported the threats made by his estranged wife to his parole officer, Mr. Dickter, and his corrections counselor, Mr. Pennolino. A change of his furlough address was approved on June 23, 1989.

On June 24, 1989, plaintiff and his estranged wife had a dispute. As a result of this dispute, plaintiff called 911 for police assistance. Upon their arrival, the police arrested the plaintiff (notwithstanding the fact that it was the plaintiff who had called 911) and incarcerated him at Rikers Island. The arresting authorities duly notified the Queensboro facility of plaintiff's whereabouts. In addition, plaintiff notified Mr. Campbell, a captain with the Temporary Release Committee, and Mr. Dickter, his parole officer, of the arrest and of his whereabouts.

On August 9, 1989, all charges against plaintiff arising from the incident with his estranged wife were dismissed and sealed pursuant to Section 160.50 of the New York Criminal Procedure Law. While incarcerated at Rikers Island, the plaintiff contacted his employer, Ogden Allied, to explain his absence from work. By letter dated July 24, 1989, Ogden Allied informed the plaintiff that on the basis of his past work performance, he was eligible to be rehired following his release, and advised plaintiff to contact them at that time.

On August 16, 1989, seven days after the charges instituted against him by his estranged wife had been dismissed, the plaintiff was placed into the custody of two officers from the Queensboro Correctional Facility. At that time, the plaintiff believed that he was being returned to the Work Release Program at the Queensboro Correctional Facility. Instead, without first being provided with a hearing, disciplinary proceeding, or any form of notice, plaintiff was transferred from Rikers Island directly to Sing Sing Correctional Facility in Ossining, New York.

According to the plaintiff, this transfer—which effectively removed the plaintiff from the Work Release Program by rendering him unable to return to his job with Ogden Allied—was accomplished with the knowledge and approval of defendants Robinson and Dunham.

On August 24, 1989, plaintiff wrote to the New York State Department of Correctional Services ["DOCS"] and to the Director of the Temporary Release Committee at Queensboro seeking a hearing before the Temporary Release Committee to explain his involuntary absence from the Work Release Program and to seek reinstatement in that program. After failing to receive a response from Queensboro, on September 9, 1989 plaintiff wrote to defendant Dunham, the Superintendent of the Queensboro Correctional Facility, requesting a hearing before the Temporary Release Committee. See Pl's. Ex. B. Plaintiff again received no response to this letter.

On September 15, 1989, plaintiff wrote to Thomas A. Coughlin III, the Commissioner of DOCS, seeking an explanation why he was removed from the Temporary Release Program without a hearing, and to request that such hearing be scheduled. See Pl's. Ex. C. Despite these efforts, however, no hearing was scheduled.

On or about October 3, 1989, all of his previous attempts at obtaining a hearing before the Temporary Release Committee having failed, plaintiff filed an order to show cause in the New York State Supreme Court seeking a hearing and reinstatement to the Work Release Program. This measure finally provoked a response, and the Temporary Release Committee scheduled a hearing for October 11, 1989.

At this hearing, the Temporary Release Committee charged the plaintiff with absconding, even though he had been incarcerated at the Sing Sing Correctional Facility for nearly two months since his transfer there on August 16, 1989. The plaintiff, in turn, provided defendant Robinson, the Temporary Release Chairperson at the Queensboro Correctional Facility, with a copy of a relevant DOCS regulation. According to the plaintiff, this regulation provided that a temporary release participant who is held in other custody following a new arrest shall not be considered an absconder for legal or other administrative purposes, and is not to have criminal or departmental charges filed against him for absconding from temporary release.

At the conclusion of the October 11th hearing, the Temporary Release Committee, chaired by defendant Robinson, nevertheless recommended to Superintendent Dunham that plaintiff be removed from the Temporary Release Program for absconding. See Pl's. Ex. D. On or about October 13, 1989, defendant Dunham reviewed the Temporary Release Committee's recommendation to remove plaintiff from the Work Release Program and concurred with its decision.

In November of 1989, DOCS recommended that the plaintiff be restored to the Work Release Program. Several days later, plaintiff was returned to the Queensboro Correctional Facility. By that time, however, plaintiff's employer, Ogden Allied, had assigned plaintiff's former position to another individual and was unable to rehire plaintiff.

Unable to return to Ogden Allied, plaintiff sought other employment through Wildcat, a city-run organization charged with finding employment for parolees within various city agencies. Shortly thereafter, plaintiff was placed as a stock handler with the Housing Preservation Department earning $3.35 per hour.

Plaintiff commenced the instant action on February 28, 1990. After counsel was appointed to represent the plaintiff, an amended complaint was filed on February 1, 1994, nearly four years after this action was instituted, and with little discovery having proceeded.

In his amended complaint, the plaintiff sets forth two distinct claims under 42 U.S.C. § 1983. First, plaintiff alleges that the defendants deprived him of his procedural due process rights in connection with their decision to remove him from the Temporary Release Program without the benefit of a timely hearing or disciplinary proceeding. Second, plaintiff alleges that his due process rights were abridged in connection with the hearing that belatedly was held before the Temporary Release Committee, as he claims that said hearing was conducted in bad faith in flagrant disregard of the Temporary Release Program's own rules and regulations.

## DISCUSSION

■ A district court should grant a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true. *Id.* at 249, 109 S.Ct. at 2906; *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The defendants set forth three arguments in support of their motion to dismiss. First, with respect to plaintiff's first cause of action, the defendants assert that the plaintiff was not deprived of a liberty interest because, under section 856 of the New York State Correction Law, a rebuttable presumption was created that the plaintiff had absconded in connection with his failure to return to the Queensboro Correctional Facility. Second, again with respect to the first cause of action, the defendants assert that no liberty interest was implicated through the delay in scheduling a temporary release hearing because the applicable regulations do not require that such hearing take place within a specified period of time. Finally, relative to the plaintiff's second cause of action, the defendants contend that any procedural deficiencies in connection with the plaintiff's hearing before the Temporary Release Committee were cured upon administrative appeal. The Court now turns to explore these arguments in greater detail in the context of the claims set forth in the plaintiff's amended complaint.

## A. First Cause of Action: Removal of Plaintiff from Temporary Release Program without Timely Hearing or Disciplinary Proceeding

■ The Supreme Court has enunciated that the requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *See Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). When protected interests are implicated, the right to some kind of hearing is essential. *See id.* The minimal contours of this hearing for purposes of due process, in turn, depend upon a consideration of (1) the private interest at stake in a governmental decision, (2) the governmental interests involved, and (3) the probable value of additional procedural safeguards in enhancing the accuracy of the determination. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976); *see also Hewitt v. Helms*, 459 U.S. 460, 473, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983) (citing *Mathews*, 424 U.S. at 335, 96 S.Ct. at 903). These considerations also apply in determining the appropriate time that due process requires such hearing to be conducted; for depending upon the nature of the interest involved and the ability of the State reasonably to foresee a deprivation of a protected interest, a constitutional deprivation may be complete despite the availability of state postdeprivation remedies. *See Zinermon v. Burch*, 494 U.S. 113, 138–39, 110 S.Ct. 975, 990, 108 L.Ed.2d 100 (1990) (State required to provide predeprivation procedural safeguards in evaluating voluntariness of plaintiff's consent to admission to state mental hospital because incompetence of person requesting admission was foreseeable and not unpredictable, and imposed insubstantial additional burdens upon the State in view of the administrative apparatus already in place.).

■ To determine whether the requirements of due process are applicable, it initially must be ascertained whether the alleged interest at stake "is within the Fourteenth Amendment's protection of liberty and property." *Roth*, 408 U.S. at 571, 92 S.Ct. at 2706. In making this evaluation, a court "must look not to the 'weight' but to the 'nature' of the interest at stake." *Id.* (citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)).

In his first claim for relief, the plaintiff contends that the defendants, acting under color of state law, deprived him of a liberty

interest without due process of law by intentionally deciding to transfer him from the Queensboro Correctional Facility to the Sing Sing Correctional Facility in contravention of the rules and regulations governing the Temporary Release Program, and moreover, without the benefit of a timely hearing or disciplinary proceeding.

■ The parties do not dispute that pursuant to *Tracy v. Salamack*, 572 F.2d 393, 396 (2d Cir.1978), the State of New York, in establishing the Temporary Release Program, has created a liberty interest that may not be terminated without an individualized due process hearing. *See Severino v. Negron*, 996 F.2d 1439, 1442 (2d Cir.1993) (per curiam) ("[I]t has been clear since *Tracy* that a liberty interest exists [in an inmate's continued participation] in a work release program."); *see also Klos v. Haskell*, 48 F.3d 81, 88 (2d Cir.1995) (Holding that no hearing is required prior to inmate's removal from "shock incarceration program," and distinguishing *Tracy* in view of State's ambiguity in conveying extent of prison officials' discretion with respect to inmates' continued participation in the Temporary Release Program.). This due process hearing must entail an "independent, good faith evaluation [manifesting] a reviewable exercise of discretion ... which ... must be accompanied by a written statement of reasons." *See Tracy*, 572 F.2d at 397.

At the time that the Second Circuit decided *Tracy*, the State of New York had enacted legislation creating the Temporary Release Program, but DOCS had not promulgated regulations to provide guidance to the individual facilities' Temporary Release Committees. With respect to this regulatory vacuum, the Second Circuit noted that the State's creation of a liberty interest is not indestructible, and therefore does not have the substantive effect of prohibiting alteration of the underlying law which created such interest. *See id.* at 396. Seizing upon this language in *Tracy*, the defendants direct the Court's attention to other provisions of the applicable correctional laws and regulations in an attempt to qualify the dimensions of this liberty interest, and to demonstrate that the de-

fendants have satisfied the minimal requirements of due process.

First, the defendants assail the amended complaint's allegations concerning the events of August 16, 1989, whereby the plaintiff contends that, shortly after the charges instituted against him by his estranged wife had been dismissed, and without first being provided with a hearing, disciplinary proceeding, or any form of prior notice, he improperly was transferred from the Rikers Island Correctional Facility to the Sing Sing Correctional Facility. According to the amended complaint, the plaintiff instead should have been transferred to the Queensboro Correctional Facility, where he would be able to continue his participation in the Work Release Program. With respect to these allegations, the defendant contends that the plaintiff's confinement at Sing Sing was in accordance with the governing regulations, to wit, section 856(2) of the New York State Correction Law, which provides that:

> The failure of an inmate to *voluntarily* return to the institution of his confinement more than ten hours after his prescribed time of return shall create a *rebuttable presumption* that the failure to return was intentional. Any inmate who is found to have intentionally failed to return pursuant to this subdivision shall be an absconder in violation of his temporary release program and will not be an eligible inmate as defined in subdivision two of section eight hundred fifty-one of this chapter.

N.Y.Correct. Law § 856(2) (emphasis added). In addition, the defendants draw the Court's attention to the regulations governing their conduct when a temporary release absconder is returned to a DOCS facility. *See* 7 N.Y.Comp.Codes R. & Regs. § 1901.2(b)(3)(iv). In light of these provisions, the defendants contend that, in view of the plaintiff's absence from the Queensboro Correctional Facility for more than ten hours after his prescribed time of return, he appropriately was presumed to have absconded. The defendants further argue that it was reasonable for the plaintiff to be classified as an absconder in view of the aforementioned rebuttable presumption established under N.Y.Correct. Law § 856(2). Thus, the defen-

dants urge the Court to conclude that no liberty interest arising under New York law was abrogated as a result of plaintiff's transfer to the Sing Sing Correctional Facility.

██ The defendants' contention is misplaced, however, insofar as it fails to view the allegations of the amended complaint in the light most favorable to the plaintiff. Specifically, the applicability of the aforementioned provisions concerning the appropriate treatment of absconders is premised upon the assumption that the plaintiff *voluntarily* failed to return to the Queensboro Correctional Facility. *See* N.Y.Correct.Law § 856(2) (requiring failure of inmate to return to the institution to be voluntary for rebuttable presumption of absconding to apply). This, however, was not the case here; according to the amended complaint, the plaintiff was involuntarily transported by two Queensboro correctional officers to the Sing Sing Correctional Facility. *See* Am.Compl. ¶ 14. Plaintiff, therefore, did *not* voluntarily fail to return to Queensboro, and consequently may not be regarded as an absconder as a matter of law. As plaintiff's allegations concerning the involuntariness of his actions must be taken as true for purposes of the instant motion to dismiss, the presumption of absconding set forth in the Correction Law is irrelevant at this juncture of the litigation. Indeed, this conclusion is further reinforced by plaintiff's allegation that he notified both his parole officer and the captain with the Temporary Release Committee of his whereabouts immediately following his arrest and incarceration at Rikers Island. *See id.* ¶ 11. Accordingly, the defendants' argument is without merit.

██ The defendants next assail the amended complaint's allegations that the plaintiff was deprived of a liberty interest without due process of law as a result of his confinement at Sing Sing Correctional Facility. The plaintiff alleges that while he was incarcerated at Sing Sing, he wrote letters seeking a hearing before the Temporary Release Committee: (i) on August 24, 1989 to DOCS and to the Director of the Temporary Release Committee at the Queensboro Correctional Facility; (ii) on September 9, 1989 to defendant Dunham; and (iii) on September 15, 1989 to Thomas A. Coughlin III, the Commissioner of DOCS. Despite these efforts, however, no hearing was scheduled. Indeed, a hearing was not finally scheduled until after the plaintiff filed an order to show cause in the New York State Supreme Court, dated October 3, 1989, seeking a hearing and reinstatement to the Work Release Program. *See id.* ¶¶ 16–18.

The defendants argue that no liberty interest was implicated by the delay in scheduling a temporary release hearing because the State regulations do not require a correctional facility to conduct such a hearing within a specified period of time. *See* 7 N.Y.Comp. Codes R. & Regs. § 1904.2. The parties do not dispute, however, that the regulations *do* provide that where an inmate is charged with a "disciplinary violation" such as absconding, a superintendent's hearing "must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized by the commissioner or his designee." *Id.* § 251–5.1(b). According to the regulations, this hearing must take place *before* the Temporary Release Committee hearing, which then would resolve the issue of whether the prisoner should be permitted to remain in the Program. *See id.* § 1904.2(h).

The defendants assert that the amended complaint fails to allege that the plaintiff was charged with a disciplinary violation, and that therefore he was not entitled to a superintendent's hearing. A review of the amended complaint, however, reveals that Paragraph 19 alleges that the plaintiff was charged with absconding. Taking this allegation as true for purposes of the present motion to dismiss, the defendants' allegation that the plaintiff had no right to a hearing is untenable, and therefore the defendants' motion to dismiss the first cause of action must be denied.

**B. Second Cause of Action: Hearing Conducted in Bad Faith**

██ The defendants also move to dismiss the plaintiff's second cause of action. In his second claim for relief, the plaintiff alleges that his due process rights were abridged in connection with the hearing that belatedly was held before the Temporary Release

Committee on October 11, 1989. Specifically, plaintiff claims that said hearing was conducted in bad faith in flagrant disregard of the Temporary Release Program's own rules and regulations. The defendants assert that the plaintiff was not deprived of due process in connection with this hearing, arguing that any procedural deficiency was cured upon administrative appeal, which resulted in plaintiff's restoration to the Work Release Program.

The defendants' argument is misplaced. The defendants cite two Second Circuit cases that stand for the proposition that, in disciplinary proceedings that do not result in the assessment of punishment pending administrative appeal, a due process violation will not occur where a procedural deficiency at a hearing has been rectified upon the administrative appeal. *See Russell v. Scully*, 15 F.3d 219, 222 (2d Cir.1993) ("[A]n inmate is not deprived of due process where an administrative appeal has cured a hearing's procedural defects."); *Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir.1992) (per curiam), *cert. denied*, —— U.S. ——, 114 S.Ct. 115, 126 L.Ed.2d 80 (1993). The defendants' analysis of the deprivation sustained by the plaintiff fails, however, to consider the Supreme Court's admonition that this Court "must look not to the 'weight' but to the 'nature' of the interest at stake." *Roth*, 408 U.S. at 571, 92 S.Ct. at 2706 (citing *Morrissey*, 408 U.S. at 481, 92 S.Ct. at 2600). With this principle as a guide, the cases cited by the defendants are clearly distinguishable from the case at bar, for neither involves a constitutional deprivation analogous to the removal of an inmate without notice from a Work Release Program. *See Tracy*, 572 F.2d at 397; *see also Severino*, 996 F.2d at 1442 ("[I]t has been clear since *Tracy* that a liberty interest exists [in an inmate's continued participation] in a work release program."). Accordingly, the defendants' motion to dismiss the second cause of action likewise must be denied.

## CONCLUSION

In accordance with the foregoing, the defendants' motion to dismiss the plaintiff's amended complaint is DENIED in its entirety.

SO ORDERED.