We issued the writ of certiorari in this case in order to review the Court of Criminal Appeals' decision, 474 So.2d 743, upholding the Board of Pardon and Parole's revocation of Richard Mark Ellard's parole. We affirm.
A complete statement of the facts is contained in the opinion of the Court of Criminal Appeals, but we set out a sufficient set of facts to support the reasons why we affirm.
Mark Ellard was incarcerated in the Alabama prison system pursuant to a life sentence for murder and a twenty-year sentence for assault with intent to murder. On December 8, 1980, parole officer Thomas Tate evaluated the social, criminal, and custodial record of Mark Ellard and recommended that he be paroled. The board met with Ellard on December 15, 1980, interviewed him, and later reviewed the parole board file. In addition to the parole evaluations and social histories made at the time of his sentencing, the file included reports on the nature of his crimes and his activities on escape in 1977, as well as documents from classification officers, work supervisors, and the warden of Holman Prison recommending that Ellard be paroled.
Based upon its investigations, evaluations, and interview, the board issued Ellard a certificate of parole. Additional factors established by petitioner's Ala.R.App.P. 39 (k) statement shall be considered below in light of their relevance to the issues presented.
In the Court of Criminal Appeals' opinion, Judge Patterson, writing for the court, set forth a detailed history of the establishment of the Board of Pardons and Paroles. He also set forth the applicable law for reexamination of the grant of parole by administrative boards.
The critical questions raised in this petition are: (1) Did Ellard have a liberty interest? and (2) Could the parole board, based on the record in this case, revoke the parole?
 I Did Ellard have a liberty interest?
The Court of Criminal Appeals correctly determined that Alabama's parole statutes do not create a "liberty interest" that cannot be revoked. Andrus v. Lambert, 424 So.2d 5
(Ala.Crim.App. 1982); Thomas v. Sellers, 691 F.2d 487 (11th Cir. 1982); Johnston v. Alabama Pardon and Parole Board,530 F. Supp. 589 (M.D.Ala. 1982). In Thomas the Middle District held as follows:
 "The Alabama statute like the Texas statute calls for discretionary rather than mandatory action on the part of the board. The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole as was found in Greenholtz [v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)]. *Page 760 
When the statute is framed in discretionary terms there is not a liberty interest created."
Although Ellard did not have a constitutionally protected liberty interest, nevertheless, we recognize that Ellard was entitled to a due process hearing; here, however, as the Court of Criminal Appeals found, Ellard was accorded substantial procedural safeguards in accordance with the mandates ofMorrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593,33 L.Ed.2d 484 (1971).
 II
Can a parole be revoked in the absence of a showing that the parolee violated a condition of his parole? There is a split of authority on this issue. In Ex parte Urbanowicz, 24 F.2d 574
(D.Kan. 1928), the Court held that a parole granted to a United States prisoner could not be cancelled or rescinded except for some offense committed by him subsequent to the date of theparole which constituted a violation of the terms of the parole.
Courts have reached a contrary conclusion, however, under statutes which confer more extensive authority on the parole board or commission. In Johnson v. Walls, 185 Ga. 177,194 S.E. 380 (1937), the Georgia Supreme Court held that the parole board did not exceed its power in revoking a parole when the prison commission which granted the parole mistakenly thought that the prisoner had served several months of his sentence instead of, in actuality, only two days of his sentence. See also In re Tobin, 130 Cal.App. 371, 20 P.2d 91 (1933).
This issue of whether a parole board can revoke a parole was addressed most recently in Tracy v. Salamack, 440 F. Supp. 930
(S.D.N.Y. 1977), modified and affirmed, Tracy v. Salamack,572 F.2d 393 (2d Cir. 1978).
The Tracy decision, although involving work release inmates and New York statutes, is strikingly similar to this case. We quote the second opinion in that case in its entirety for a complete understanding of the facts and the laws, omitting only the footnotes:
 "This appeal is from an order of the United States District Court for the Southern District of New York, Morris E. Lasker, Judge, granting appellees' motion for a preliminary injunction and ordering reinstatement of members of the plaintiff class in the temporary release program instituted by the New York State correctional system in 1969. Tracy v. Salamack, 440 F. Supp. 930 (S.D.N.Y. 1977) (mem.), and delineating the circumstances under which removal would be proper after a Due Process hearing. Tracy v. Salamack, 440 F. Supp. 930, No. 77 Civ. 3937 (S.D.N.Y., dated Nov. 7, 1977).
 "Under the statutory scheme in effect before September 1, 1977, any inmate within one year of eligibility for parole could apply for participation in the program. Each of the 140 original members of the plaintiff class had received approval to participate in the program prior to August, 1977, and many were already doing so. The underlying statute was amended in July, 1977, effective September 1, 1977, (a) to provide that no person otherwise eligible who is under sentence for certain violent crimes may participate in the program `without the written approval of the commissioner,' and (b) to require the commission to `promulgate regulations' for the guidance of temporary release committees at each institution in effectuating the statutory mandate. No such regulations were formulated. Nonetheless, in August, 1977, the Department of Correctional Services conducted a four-step screening process of the 824 temporary release participants, resulting in removal of the 140 original members of appellees' class. The inmates then brought this civil rights action and moved for a preliminary injunction requiring the Department to reinstate them and to grant them hearings before future changes in their status could be made.
 "Judge Lasker concluded that the Due Process Clause protects appellees *Page 761 
against removal from the program without a prior hearing. He first found that appellees had suffered a `grievous loss' of a liberty interest by analogizing temporary release to other release programs which have been held to merit Due Process protection. Tracy v. Salamack, supra, 440 F. Supp. at 933-34. Relying on these precedents, . . . the statute, prior official policy and practice in administering the program, and the wording of the form agreement signed by all participants, the district court further held that appellees had an `entitlement' in the temporary release program. Id. at 934-36.
 "Thus far, we agree with Judge Lasker's findings of fact and conclusions of law. We also agree that a preliminary injunction to maintain the status quo of appellees' eligibility and participation was warranted. However, we cannot agree with the constraints which the district court imposed on the Department's authority to revoke these participation rights.
 "Judge Lasker held that `because plaintiffs' entitlement . . . came into existence only after a security check at the time each plaintiff was originally admitted to the program,' Tracy v. Salamack, supra, No. 77 Civ. 3937, 440 F. Supp. at 936,
 none of the members of the plaintiff class may be removed from the temporary release program on allegations that their participation would constitute a threat to the security of the community except upon a showing, in accordance with due process, that a change of facts has occurred since the original determination permitting the inmate's participation, or the discovery by the defendants of new relevant facts which, although they existed at the time of the original decision, were unknown to the defendants through no fault of their own and through no lack of reasonable diligence on their part. As to any inmate alleged to be a security risk under such circumstances, he shall be restored to the temporary release program unless within twenty days from the filing of this order the charges against him are heard and determined in accordance with the requirements for hearings at correctional institutions set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
Id. at 936.
 "We think this order goes too far by in effect prohibiting the State from changing its law regarding the eligibility of inmates already participating in the program. An `entitlement' rooted in state law may well require an individualized procedural due process hearing before it may be revoked. It does not, however, have the substantive effect of prohibiting alteration of the underlying law which creates the entitlement. See generally Tribe, Structural Due Process, 10 Harv. C.R.-C.L.L.Rev. 269, 270-83, 301-08 (1975). We believe that a Due Process hearing is required before inmates already participating in or approved for the program may be removed. But the formula adopted by the district court — authorizing revocation of participation rights only when based on additional new facts or previously unknown facts indicating a threat to the community — is too rigid. Due Process requires a reevaluation by the commissioner of each participating inmate's eligibility in the light of the threat that the inmate presents to the security of the community, N.Y.Correc. Law § 855 (4) (McKinney Supp. 1977-78), taking into account his eligibility for parole, his past institutional record, the particular circumstances underlying the violent offense for which he is under sentence, and his previous temporary release record. There is, as we read the statute, no blanket requirement that the commissioner disapprove an otherwise eligible participant because he is serving for one of the specified offenses; otherwise, the phrase `without the written approval of the commissioner' would be meaningless. What is required is the commissioner's independent, good faith evaluation — a reviewable exercise of *Page 762 
discretion — to take place following a Wolff v. McDonnell Due Process hearing which, of course, must be accompanied by a written statement of reasons. See Friendly, `Some Kind of Hearing,' 123 U.Pa.L.Rev. 1267, 1292 (1975).
 "Thus, we modify the preliminary injunction to read as set forth in the margin, and as so modified affirm, without costs."
572 F.2d at 394-397.
The Second Circuit Court of Appeals modified the preliminary injunction issued by the district court to read as follows:
 "[N]one of the members of the plaintiff class may be removed from the temporary release program on allegations that his participation would constitute a threat to the security of the community except upon finding, in accordance with due process, accompanied by a written statement of reasons, that such participation would constitute such a threat in the light of (a) his eligibility for parole, his past institutional record, the circumstances underlying the violent offense for which he is under sentence, and his previous temporary release record; or (b) the discovery by the defendants of new relevant facts which, although they existed at the time of the original decision, were unknown to the defendants through no fault of their own and through no lack of reasonable diligence on their part; or (c) a change of facts since the original determination permitting the inmate's participation."
572 F.2d at 397 (2d Cir. 1978).
Although the Tracy court was interpreting New York statutes, we find that court's reasoning applicable to the situation at hand. In fact, in Tracy the Second Circuit found that New York amended its statutes to correct those situations in which "a convicted murderer, rapist or armed robber [was] too easily entitled to participate in work release." 572 F.2d at 396, n. 11.
The thrust of the Tracy decision, as we read it, is that a state can review a conditional release of a prisoner and revoke it if the prisoner is given a hearing accompanied by a written statement of reasons. Although not stated by the Tracy court, we believe the underlying rationale for the result reached there is that the public has an interest in protecting itself against the early or conditional release of prisoners who might pose a threat to the community. We recognize that in Tracy this public interest was spelled out in amendments to New York law governing work release inmates, but we do not believe that a parole board, like Alabama's, could not reexamine an inmate's past record and conclude that in granting parole it had failed to follow the public will, as expressed in the parole statutes.
We believe that a determination of whether a parole board can revoke a parole requires a balancing of the public interest against the interest of the prisoner in receiving the benefits of the parole granted to him. In balancing these interests, we must not, of course, be guided by public clamor or media interest, but by an application of the principles of law which delineate the public interest in granting paroles only to those found by the Board of Pardons and Paroles to be legally eligible for parole, and the prisoner's interest in being accorded his freedom if the Board in the exercise of its discretion determines that the prisoner is eligible. Here, there was great media interest and the attorney general, as the chief legal officer of the state, was of the opinion that Ellard should not have been paroled.
As we understand the opinion by the Second Circuit in Tracy, a board is not limited to a consideration of the events occurring after a parole is granted, but may reconsider the character of the offense and can reexamine the very basis on which parole was initially granted, and can determine that it did not follow the statutory scheme.
In Tracy, the prison commissioner was authorized to reexamine the record of work release inmates who were murderers, rapists, and robbers, and remove them from the program. The Court opined that "[d]ue *Page 763 
process requires a reevaluation by the commissioner of each participating inmate's eligibility in the light of the threat that the inmate presents to the security of the community, . . . taking into account his eligibility for parole, his past institutional record, the particular circumstances underlying the violent offense for which he is under sentence, and his previous temporary release record." 572 F.2d at 396-97.
The parole board is charged with the responsibility of determining who is eligible for parole. If it determines that it made a mistake in carrying out its duties, it is not powerless to rescind its actions, provided, of course, the prisoner is accorded his due process rights.
We hold that based upon the record before it and after a reexamination of all of the information, including the prisoner's eligibility for parole, his past institutional record, the circumstances underlying the violent offense for which he is under sentence, and his previous parole record, the board was authorized to determine that in the initial grant of parole, it failed to properly exercise its discretion in accordance with Alabama's statutory scheme; therefore, we find that the Board had authority to determine that an error was made on initial review of Ellard's eligibility and, after notice, hearing, and a reexamination of the pertinent facts, had the authority to revoke his parole. The judgment of the Court of Criminal Appeals is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, SHORES and ADAMS, JJ., concur.
JONES, ALMON, EMBRY and BEATTY, JJ., dissent.