**Richard Mark ELLARD,
Petitioner-Appellant,**

v.

**ALABAMA BOARD OF PARDONS AND PAROLES; Ealon M. Lambert, John Thomas Porter, and Ray Morrow, members of the Board of Pardons and Paroles of the State of Alabama; and State of Alabama, Respondents-Appellees.**

**No. 86–7438.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 19, 1987.

Rehearing and Rehearing En Banc
Denied Sept. 24, 1987.

Sydney Albert Smith, Alabama Board of Pardons & Paroles, Montgomery, Ala., for respondents-appellees.

Before FAY and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

At issue in this appeal is whether a prisoner who has been paroled by one state directly into the custody of another state has a constitutionally protected liberty interest in the first state's grant of parole. The district court concluded that, because such a prisoner has not been released into society, the grant of parole does not create a liberty interest protected by the due process clause of the fourteenth amendment. We reverse and remand to the district court for an evidentiary hearing.

## I. BACKGROUND

In 1972, appellant, Richard Mark Ellard, pleaded guilty in Alabama to one count of first degree murder and one count of assault with intent to murder. He was sentenced to life in prison on the murder charge and to a concurrent 22–year sentence on the assault charge. In 1976, Ellard pleaded guilty in Georgia to another murder charge.[1] He was given a life sentence to run concurrently with the Alabama sentences. After the Georgia sentence was imposed, Ellard remained in custody in the Alabama prison system.

In 1981, the Alabama Board of Pardons and Parole granted Ellard parole and released him into the custody of the state of Georgia to serve his life sentence there. Following a burst of public outrage at the parole decision, the Parole Board requested Alabama Attorney General Charles Graddick to provide an opinion on whether the Board validly could revoke a parole that was "legally issued" but that operated only

Ralph I. Knowles, Drake, Knowles & Pierce, Tuscaloosa, Ala., for petitioner-appellant.

Donald Siegelman, Atty. Gen., The Alabama State House, Montgomery, Ala., Joseph G.L. Marston, III, Asst. Atty. Gen.,

---

1. The details of Ellard's crimes are set forth in *Ellard v. State,* 474 So.2d 743, 746 (Ala.Crim. App.1984), *aff'd on other grounds sub. nom. Ex parte Ellard,* 474 So.2d 758 (Ala.1985).

to release the parolee directly into the custody of another state to serve a pending sentence there. Graddick informed the Board that in his opinion the decision to grant Ellard parole was based upon incomplete information and thus was in violation of Alabama law. He concluded that the Board therefore was authorized to reconsider its decision to grant Ellard parole. The Board, relying on this opinion, declared Ellard in technical violation of his parole and had him returned from Georgia. After conducting an evidentiary hearing, the Board revoked Ellard's parole. Ellard subsequently was transferred back to Georgia to serve out his sentences there.

Ellard commenced state proceedings in Alabama to have the parole revocation reversed. The Alabama Court of Criminal Appeals found that the initial parole decision was based upon incomplete information, was not in accordance with the Parole Board's authority under Alabama law, and thus was void. *Ellard v. State*, 474 So.2d 743 (Ala.Crim.App.1984). In affirming, the Alabama Supreme Court relied on a completely different rationale. That court concluded, in a 5-to-4 decision, that the Parole Board has the inherent authority to reconsider and rescind a grant of parole so long as "the prisoner is accorded his due process rights." *Ex parte Ellard*, 474 So.2d 758, 763 (Ala.1985).

Ellard subsequently filed a petition for habeas corpus in federal court. The district court, adopting the recommendations of the magistrate, concluded that because Ellard never had been released from prison confines, he did not have a liberty interest and thus "was not entitled to any federal due process protection." The court rejected as "farfetched and meritless" Ellard's contention that the grant of parole by Alabama created a liberty interest by increasing his chances of eventual freedom should Georgia eventually grant him parole. The court also summarily rejected Ellard's claim that the Board denied him equal protection by treating him differently than all other parolees.

## II. A LIBERTY INTEREST?

The due process clause of the fourteenth amendment to the United States Constitution provides that no state "shall deprive any person of life, liberty, or property without due process of law." Although "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen," prisoners nevertheless "may claim the protections of the Due Process Clause." *Wolff v. McDonnell*, 418 U.S. 539, 555–56, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Yet, "the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed." *Id.* at 556, 94 S.Ct. at 2975. Consequently, prisoners "retain only a narrow range of ... liberty interests" protected by the due process clause. *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983).

Those liberty interests of prisoners that are protected by the fourteenth amendment "arise from two sources—the due process clause itself and the laws of the State." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983). For a protected interest to arise from the due process clause itself, there must be in "the nature of the interest" some qualities that are inherently deserving of protection. *See Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972). Due to "the necessary withdrawal or limitation of many privileges and rights" that results from lawful incarceration, *Price v. Johnson*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356, protected interests that arise purely from the due process clause are restricted to "the most basic liberty interests in prisoners." *Hewitt v. Helms*, 459 U.S. at 467, 103 S.Ct. at 869. Thus, the Constitution itself does not guarantee either parole, *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979), or good-time credit for satisfactory behavior, *Wolff v. McDonnell*, 418

U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974), nor does it protect against either the transfer from one prison to another, *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2632, 49 L.Ed.2d 451 (1976), or "administrative segregation" within a particular prison, *Hewitt v. Helms, supra.* Once an individual has been released into society under the constraints of either parole or probation, however, the resulting freedom, "although indeterminate, includes many of the core values of unqualified liberty" and thus inherently "falls within the protection of the Fourteenth Amendment." *Morrissey v. Brewer*, 408 U.S. at 482, 92 S.Ct. at 2601 (parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (probation); *see also Vitek v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980) (involuntary confinement in mental hospital so "qualitatively different" from usual confinement for criminal conviction that its imposition must be according to strictures of due process clause).

In considering whether Ellard's parole by the state of Alabama into the custody of the State of Georgia created a constitutionally protected interest, the district court examined primarily the nature of the interest immediately created by the grant of parole. *See Morrissey v. Brewer*, 408 U.S. at 483, 92 S.Ct. at 2601. Concluding that Ellard "has not received any liberties because of the parole and [that] the possibility of future liberty is speculative," the court decided that Ellard's parole did not create a protected liberty interest.

 If the nature of the liberty created by the parole were the only basis for determining that the interest deserves protection by the due process clause, we might be inclined to agree with the conclusion of the district court. As we have noted, however, a liberty interest may also arise from state laws. *See, e.g., Hewitt v. Helms, supra; Vitek v. Jones*, 445 U.S. at 488, 100 S.Ct. at 1261 (1980); *Whitehorn v. Harrelson*, 758 F.2d 1416, 1422 (11th Cir. 1985). This occurs when a state places "substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238,

249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). Thus, for example, although "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison," once a state has "created the right to good time" and has established standards for its revocation, "the prisoner's interest has real substance" and falls within the protections of the fourteenth amendment. *Wolff v. McDonnell*, 418 S.Ct. at 557, 94 S.Ct. at 2975. Similarly, although the mere possibility of parole provides simply "a hope that is not protected by due process," a state might create by statute "an expectancy of release [that] ... is entitled to some measure of constitutional protection." *Greenholtz*, 442 U.S. at 11, 12, 96 S.Ct. at 2105, 2106 (1979); *see also Vitek v. Jones*, 445 U.S. at 489, 100 S.Ct. at 1262 (liberty interest against transfer to mental hospital created by "objective expectation, firmly fixed in state law and official penal complex practice").

As was correctly noted in the magistrate's report adopted by the district court, the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers*, 691 F.2d 487 (11th Cir.1983). We are not here confronted, however, with a claim that a liberty interest in parole arises from the mandates of the statute itself. Rather, the issue is whether a liberty interest arose from state law as a result of the Parole Board's decision to exercise its discretionary authority to grant parole to Ellard. We must determine, then, whether having exercised this discretionary authority, the Parole Board was constrained by "substantive limitations" on its authority to rescind a parole decision. *See Olim v. Wakinekona*, 461 U.S. at 249, 103 S.Ct. at 1747.

 In arguing that the Board's grant of parole to Ellard did not create a constitutionally protected liberty interest, the state claims that the parole granted to Ellard was simply a "transfer" to another state's prisons. The state concedes that Ellard

technically received a "parole," [2] but contends that the existence of a liberty interest should depend upon the substance of the action and not upon the words or form used to accomplish it. This argument, however, simply begs the question whether a liberty interest is created by state law. Contrary to the state's contentions, words and form *do* matter. Indeed, they are the essence of a substantive liberty interest created by state law. As the Supreme Court has made clear, where a claimed liberty interest does not arise from the due process clause itself, "[t]he ground for any constitutional claim, if any, must be found in statutes or other rules defining the obligations of the authority charged with exercising" the claimed liberty interest. *Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981). The due process clause, in short, prohibits the states from negating by their actions rights that they have conferred by their words.[3] The states, of course, may elect not to confer rights, such as parole, that are not inherent in the Constitution. But once a state does choose to confer such a right, the prisoner's interest has "real substance," and the right can be revoked only under the limitations imposed by the due process clause. *Wolff v. McDonnell*, 418 U.S. at 557, 94 S.Ct. at 2975; *see Vitek v. Jones*, 445 U.S. at 490–91, 100 S.Ct. at 1262–63.

Here, by the state's own concession, Ellard formally was granted "parole" under Alabama law. Despite the state's arguments to the contrary, Ellard's release into the custody of another state does not minimize the fact that, under Alabama law, this event placed substantive limits on the state's authority to return him to an Alabama prison.[4] Although the Alabama prison system retains "legal custody" over parolees, prisoners granted parole are entitled "to go outside of prison walls and enclosures" under conditions prescribed by the Parole Board. Ala.Code § 15–22–26 (1975). The parole statute provides for the return of a parolee to prison only if the parolee violates the conditions of parole, Ala.Code § 15–22–32, or if the parole is deemed void due to the failure of the parole board to follow the statutory requirements in granting parole, *see* Ala.Code § 15–22–40. Nowhere does the statute expressly or impliedly provide the Parole Board the unlimited authority to revoke a parole that has been granted.[5] Indeed, the statute specifically states that "the limitations and restrictions on the powers of the board or the members thereof shall be strictly construed." Ala.Code § 15–22–38. *See Ex parte Ellard*, 474 So.2d at 766, (Embry, J., dissenting) (noting statutory restrictions on Parole Board's authority). In view of the statutory restrictions on the authority of the Parole Board to revoke a parole, we

**2.** Somewhat contradictorily, the state also urges us to accept the conclusion by the Alabama Court of Criminal Appeals that the Parole Board was without the statutory authority to do any more than transfer Ellard to the custody of another state. See *Ellard v. State,* 474 So.2d at 752–53. As we discuss in note 8, *infra,* this conclusion implicitly was rejected by the Alabama Supreme Court. 474 So.2d at 759–60.

**3.** If, as the state contends, words and form did not matter, the Supreme Court could not have concluded in *Greenholtz, supra,* that the language of the challenged state statute created a constitutionally protected interest in parole, nor could the Court similarly have concluded in *Wolff v. McDonnell, supra,* that the state statute alone created a constitutionally protected liberty interest in good-time credits. If substance rather than language were the sole touchstone for the existence of a liberty interest, the Court in these cases would have looked only to the actions of the states.

**4.** Because Ellard was released from the custody of the State of Alabama, the State's reliance on *Jago v. Van Curen,* 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981) (per curiam), is misplaced. In *Van Curen,* the habeas petitioner was informed that he would be granted parole, but the parole decision was rescinded before the parole went into effect. Here, although Ellard has not been released from prison, his parole from the Alabama prison was effected by his transfer to Georgia.

**5.** Of course, if such authority were provided, the due process clause would prohibit its exercise at least as to prisoners paroled into society. *See Morrissey v. Brewer,* 408 U.S. 471, 475, 482, 92 S.Ct. 2593, 2597, 2601, 33 L.Ed.2d 484 (1972) (holding that parolee has a liberty interest despite express statutory provision authorizing revocation of parole at any time).

conclude that Ellard had a constitutionally protected liberty interest.[6]

■ These statutory provisions notwithstanding, the state contends that the Alabama Supreme Court upheld the Board's actions under the rationale that the Board has the inherent authority to "rescind its actions" once "it determines that it has made a mistake in carrying out its duties." *Ex parte Ellard,* 474 So.2d at 763. This interpretation of the Board's authority, the State contends, is a matter of state law that is binding on this court. Certainly, as the state suggests, the construction of a state's laws by its own courts may be of benefit in determining whether the laws create a constitutionally protected liberty interest. *See Greenholtz,* 442 U.S. at 12, 99 S.Ct. at 2106.[7] Here, however, the decision by the Alabama Supreme Court does not compel a decision that Ellard had no liberty interest in his parole. To the contrary, implicit in the Alabama Supreme Court's majority opinion are the assumptions that Ellard in fact was granted a parole and that this event created a liberty interest sufficient to trigger the procedural components of the due process clause.

The Alabama Supreme Court made clear that the legal issue was "whether a parole board can revoke a parole." 474 So.2d at 762. This statement of the issue necessarily assumes that, under state law, a parole was granted.[8] Moreover, the court expressly stated that a parole could be revoked only if "the prisoner is accorded his due process rights." *Id.* at 763. Again, this express limitation on the Board's ability to revoke parole necessarily assumes that a liberty interest was created by the grant of parole to Ellard.[9]

6. The restrictions on the Parole Board's authority to revoke a parole also require us to reject the state's contention that Ellard's claim became moot upon his transfer back into the custody of Georgia following the revocation of his parole. Under the terms of the transfer, Ellard would be returned to the custody of Alabama should he ever receive parole from his Georgia sentence. If his Alabama parole is reinstated, however, Ellard would be entitled to release into society upon parole by Georgia. Hence, Ellard clearly retains an interest in challenging the revocation of his Alabama parole. *See Jago v. Van Curen,* 454 U.S. at 21 n. 3, 36 S.Ct. at 36 n. 3; *cf. Weinstein v. Bradford,* 423 U.S. 147, 148, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975) (per curiam) (habeas petition challenging parole procedures rendered moot by petitioner's "complete release from supervision").

7. On the other hand, the question whether state laws create a federally protected right never could depend exclusively on the construction of those laws by a state court. *Cf. Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265 (1982) (rejecting state court's decision that statute did not create property interest where result "would allow the State to destroy at will virtually any state-created property interest"). A state court's interpretation of a statute might be so inconsistent with the statute's language and history that the state court decision itself would be a "wholly arbitrary and irrational" action in violation of due process. *See Martinez v. State of California,* 444 U.S. 277, 282, 100 S.Ct. 553, 556, 62 L.Ed.2d 481 (1980); *cf. Douglas v. Buder,* 412 U.S. 430, 432, 93 S.Ct. 2199, 2200, 37 L.Ed.2d 52 (1973) (finding due process violation in "unforeseen"

construction of state law to justify rescission of probation).

8. By so defining the issue, the Alabama Supreme Court implicitly rejected the conclusion of the Alabama Court of Criminal Appeals that the Parole Board was without authority to grant a prisoner parole into the custody of another state. *See* 474 So.2d at 752–53.

9. The state supreme court majority did state that "Ellard did not have a constitutionally protected liberty interest." 474 So.2d at 760. This statement, however, was based exclusively on the majority's conclusion that the state "parole statutes do not create a 'liberty interest' that cannot be revoked." *Id.* at 759. Yet, as noted previously, the issue presented is not whether the statute itself creates a liberty interest, but whether a liberty interest was created by the action of the Parole Board in granting parole to Ellard. Although the Alabama Supreme Court majority did not specifically address this issue, the majority's conclusion that "Ellard was entitled to a due process hearing," *id.* at 760, 763, necessarily assumed that a liberty interest arose from the grant of parole. Indeed, in considering whether the Parole Board could reconsider and revoke Ellard's parole, the majority gave no consideration to the fact that Ellard had not been released into society but into the custody of another state. Rather, the court analyzed the question in terms of whether the Board could reconsider any parole that had been granted, regardless of whether the parolee was released to another prison system or into society at large. The state does not question that a prisoner who has been paroled into society has a constitutionally protected liberty interest in parole. *See Morrissey v. Brewer, supra.*

The Alabama Supreme Court did not conclude that, under *state* law, the grant of parole to Ellard did not place substantive limitations on the authority of the Parole Board to rescind the decision. Rather, the court merely determined that, in spite of the substantive limitations on the Parole Board's authority to reconsider a grant of parole, the Board's revocation of Ellard's parole did not violate the due process clause.[10] This conclusion regarding the scope of the protection of the due process clause, however, concerns a matter of federal law of which the federal courts have the authority, and, indeed, the obligation, to make an independent determination. *See, e.g., Vitek v. Jones*, 445 U.S. at 490–91, 100 S.Ct. at 1262–63.

## III. WHAT PROCESS IS DUE?

### A.

Our determination that Ellard has a protected liberty interest in parole does not end our inquiry. Ellard contends that his parole must be reinstated because the due process clause permits a revocation of parole only if there is a violation of a parole condition. The state argues, however, that Ellard's parole was void as a matter of state law and thus that its revocation, after a hearing, was consistent with the procedural mandates of the due process clause. The state claims, in essence, that if Ellard did have a constitutionally protected liberty interest, he received all the process that he was due.

▆▆▆▆ It is now well established that when a liberty interest arises out of state law, the substantive and procedural protections to be accorded that interest is a ques-

tion of federal law. *See Bearden v. Georgia*, 461 U.S. 660, 665 n. 7, 103 S.Ct. 2064, 2069 n. 7, 76 L.Ed.2d 221 (1983); *Vitek v. Jones*, 445 U.S. at 490–91, 100 S.Ct. at 1262–63; *cf. Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540–42, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (property interest). Consequently, if Ellard was granted a valid parole, the substantive constraints of the due process clause would permit the parole to be rescinded only if Ellard violated a parole condition. *See Bearden v. Georgia*, 461 U.S. at 665 n. 7, 103 S.Ct. at 2069 n. 7; *Douglas v. Buder*, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973) (per curiam). This federal substantive limitation on the authority of a state to rescind a *valid* parole does not also suggest, however, that the state could rescind an *invalid* parole only upon the violation of a parole condition. There is little doubt, for example, that, consistent with the due process clause, a state could revoke a parole that was mistakenly granted to the wrong individual. Likewise, the due process clause would not prohibit a state from declaring void a parole that was granted in clear violation of the state's parole guidelines, where, as here, the parole statute expressly provides for such a contingency, *see* Ala.Code § 15–22–40.

▆▆▆▆ In view of the authority of the states under the federal constitutional law to declare void an illegally granted parole, the state contends here that the question whether a parole in fact is void is purely a matter of state law. Thus, the state claims, the federal habeas courts are bound by the decision by the Alabama Court of Criminal Appeals that Ellard's parole was void. We disagree.[11] Although the Consti-

---

10. In determining that the Parole Board had the authority to revoke Ellard's parole, the majority of the Alabama Supreme Court did not consider the language, structure, or history of the Alabama parole statute. Instead, relying exclusively on *Tracy v. Salamack*, 572 F.2d 393 (2d Cir. 1978), which upheld the revocation by the state of New York of work release for various classes of offenders, the majority first concluded that the due process clause does not prohibit a state parole board from reconsidering and revoking a parole that has been issued. *Ex parte Ellard*, 474 So.2d at 762. From this conclusion, the majority then reasoned that the Alabama Parole

Board "was not powerless to rescind its actions." *Id.* at 763. The court's resolution of the issue thus turned primarily on the federal law question of the scope of the protection of the due process clause, and not on the state law question of the authority granted by the parole statute.

11. We disagree also with Ellard's contention that this decision of state law was reversed by the Alabama Supreme Court. In contrast to the court of appeals' conclusion that Ellard was only transferred to Georgia, *see* footnote 8, *supra*, the issue of voidness was not implicitly or

tution does not prohibit a state from declaring void a previously granted parole, the state's authority to do so is limited by the procedural and substantive requirements of the due process clause. If this were not so, simply by declaring a parole void a state could effectively escape the due process clause's restrictions regarding the revocation of parole. Consequently, before a state can declare a parole void, the parolee must be accorded procedural protections similar to those that apply when a valid parole is to be revoked. *See Morrissey v. Brewer,* 408 U.S. at 488–89, 92 S.Ct. at 2603–04 (suggesting minimum procedural requirements that must accompany parole revocation). Furthermore, the substantive protections of the due process clause would permit a state to declare a parole void only if a clear departure from established statutory and regulatory guidelines substantially undermined the Parole Board's decision "that the State's penological interests do not require [continued] imprisonment." *See Bearden v. Georgia,* 461 U.S. at 469–70, 103 S.Ct. at 2071.

### B.

■ Because the district court dismissed Ellard's petition on the basis of the pleadings, we have an insufficient factual record upon which to determine whether the state's nullification of the parole satisfied the procedural and substantive requirements of the due process clause. Consequently, we must remand this case for the district court to conduct an evidentiary hearing.[12] Due to the novel legal questions posed by Ellard's substantive due process claim, however, we deem it appropriate to provide some guidance for the district court in evaluating the facts that are likely to be presented.[13]

■ In evaluating the evidence regarding the validity of Ellard's parole, the district court should be mindful that the issue to be decided is not whether the court would have granted parole on the basis of all the evidence presented, or even whether, on the basis of the additional evidence, the Parole Board acted wisely in declaring Ellard's parole void. Rather, the issue is whether, as a matter of state law constrained by the due process clause of the federal Constitution, the initial parole granted to Ellard was void. As we have indicated, the due process clause permits a state to declare a parole void only if the parole was issued after a clear departure from state law *and* this departure substantially undermined the determination whether the state's penological interests would be served by continued imprisonment. A state cannot, consistent with the due process clause, declare a parole void simply on the basis of additional information that was not previously considered.

With these principles in mind, we consider the reasons cited by the state in support of its contention that Ellard's parole was void. In upholding the Parole Board's nullification of Ellard's parole, the Alabama Court of Criminal Appeals concluded that the parole was void due to the failure of the Parole Board to: (1) obtain and consider certain evidence prior to granting the parole as required by Ala.Code § 15–22–25; (2) consider the "considerable evidence of public opposition" to the parole; and (3) ensure that Ellard have self-sustaining employment as required by Ala.Code § 15–22–28(d). *See* 474 So.2d at 752. Another ground for nullification that has been asserted but was not relied upon by the Alabama appeals court is that the Parole Board failed, in violation of Ala.Code

explicitly rejected by the supreme court majority.

**12.** In addition to his due process claims, Ellard also challenged the rescission of his parole on equal protection grounds. In dismissing Ellard's habeas petition, the district court, adopting the magistrate's recommendation, concluded that the viability of the equal protection claim was dependent upon the existence of a liberty interest. We need not consider the validity of this determination. In view of our conclusion that the grant of parole to Ellard did create a liberty interest, the district court should reconsider the equal protection claim on remand.

**13.** The standards for considering Ellard's procedural due process claim are adequately set forth in *Morrissey v. Brewer, supra,* and subsequent cases.

§ 15–22–31, sufficiently to consider the possibility that Ellard might "lapse[ ] into criminal ways." [14]

■ Applying the principles previously stated, we have little difficulty in rejecting as without merit all but the first of the asserted grounds for the nullification of Ellard's parole. The Alabama parole statute nowhere instructs the Parole Board to consider public opposition in determining whether a particular inmate is entitled to parole. The failure of the Board to consider public opposition in this case thus could not constitute a deviation from established parole guidelines. Similarly without foundation is the conclusion by the Alabama Court of Criminal Appeals that the Parole Board improperly failed to ensure that Ellard would be employed. The Alabama parole statute prohibits granting a parole unless a majority of the Parole Board determines that the parole candidate "will be suitably employed ... *or* will not become a public charge." Ala.Code § 15–22–28(d) (emphasis added). Consequently, the parole could be deemed invalid only if incarceration in another state constituted a "public charge" under the terms of the parole statute. Such a construction of the statute, however, effectively would preclude parole into the custody of another state. As previously noted, the Alabama Supreme Court, in assuming that Ellard was granted a parole, implicitly rejected such a construction.

■ Nor can Ellard's parole be deemed void due to the Parole Board's alleged failure to consider whether Ellard might "lapse[ ] into criminal ways." Section 15–22–31(a) of the Alabama Code authorizes the revocation of a parole where either a parole officer or a member of the Parole Board has "reasonable cause" to believe that a parolee "has lapsed, or is probably about to lapse, into criminal ways." This section, however, expressly applies only to "paroled prisoners," and thus cannot serve as a basis for concluding that a parole was granted in violation of established state guidelines.[15]

The only remaining basis for concluding that Ellard's parole was void, then, is that the Parole Board failed to comply with the requirements of Ala.Code § 15–22–25 that the Board obtain certain information prior to granting a parole. In determining that the Board did not comply with this provision, the Alabama Court of Criminal Appeals noted, specifically, that the Board failed to obtain and consider: (1) a pre-sentence psychological report made of Ellard in 1971, (2) evidence of misconduct and criminal activity while Ellard was on escape in 1977, and (3) an escape in 1971. The State also contends in its brief before this court that the files relied upon by the Parole Board in granting Ellard parole contained an inaccurate and incomplete account of his crimes.

■ From the limited record before us, it appears that the failure of the Parole Board to consider the pre-sentence psychological report was a departure from the established parole guidelines. The Alabama parole statute requires the board to acquire for each parole candidate "information as complete as may be obtainable," including any existing available reports on the candidate's "psychiatric condition and history." Ala.Code § 15–22–25(a); *cf. Sellers v. Thompson*, 452 So.2d 460, 463 (Ala. 1984) (statute does not require Parole Board to order a psychiatric evaluation where a report does not exist). The report

---

**14.** This rationale was one of two grounds stated by Attorney General Graddick in recommending that the Parole Board revoke Ellard's parole. The other rationale stated by the attorney general was that in granting the parole the Board relied upon files that were insufficient under Ala.Code § 15–22–25. In revoking the parole, the Board indicated only that it did so in accordance with the opinion of the attorney general.

**15.** This does not suggest, of course, that the Board's alleged failure to consider the possibility of a lapse into criminal ways is entirely irrelevant in judging the validity of a parole. Rather, any evidence regarding the likelihood of lapse should be considered in determining whether the Parole Board acted in violation of its duty under Ala.Code § 15–22–25. *See infra.*

at issue apparently was both "existing" and "available" within the terms of the statute, since, according to the Alabama Court of Criminal Appeals, it was in the files of the State Department of Corrections. 474 So.2d at 752.

Less evident from the record before us, however, is whether the absence of this report substantially undermined the Parole Board's determination that the state's penological interests would not be served by Ellard's continued imprisonment in Alabama. Among the factors that may be relevant to this determination are the thoroughness of the psychological evaluation, the lapse of time between the evaluation and the parole determination, evidence that was before the Parole Board regarding Ellard's rehabilitation, and the continued accuracy of the report as an indication of Ellard's psychological state at the time his parole was issued.[16]

■ In contrast to that of the psychological report, the omission of the other alleged new evidence does not readily appear to have been so clearly a departure from the parole guidelines. The Alabama Court of Criminal Appeals apparently concluded that the absence of the certain evidence concerning Ellard's escapes in 1971 and 1977 rendered legally insufficient the "complete" investigation of Ellard's "social and criminal history" that is required by Ala.Code § 15–22–25(b) before a parole can issue. The due process clause, however, does not permit such an expansive reading of the statute to serve as a basis for declaring the parole void. The pre-parole investigation of Ellard contained a full account of Ellard's prison record, including the fact that he escaped for a seven-month period in 1978 until he was recaptured in Arizona while attempting to use an altered money order. When this report was conducted, Ellard's file already contained a pre-sen-

tence report detailing the relevant facts of his life prior to beginning his prison term. Particularly in view of the pre-sentence report then in Ellard's file, the pre-parole report cannot be deemed legally insufficient merely because it might have been more complete. Such a construction of the statute would enable the state to render void any parole by the simple expedient of producing additional information that previously was not considered. This, as was previously noted, the due process clause does not permit. Consequently, the absence of the additional evidence regarding the escapes can be considered a departure from established state parole guidelines only if the district court finds that the information was contained in "existing available records" that the Parole Board would have been required to obtain pursuant to Ala.Code § 15–22–25(a). *Cf. Sellers v. Thompson, supra.*

■ The details of Ellard's crimes require a similar finding before their absence in the parole determination can be deemed a departure from established state guidelines. Section 15–22–25(a) requires that the Parole Board must obtain certain information, including "a complete statement of the crime for which [the parole candidate] is then sentenced, [and] the circumstance of such crime." Although the Alabama Court of Criminal Appeals did not refer to the incompleteness of the account of Ellard's crimes in upholding the Parole Board's nullification of the parole, the state now contends that this was one of the factors that rendered the grant of parole invalid. As with the pre-parole investigation, however, the information of Ellard's crimes contained in his parole file cannot be deemed so incomplete as to be legally insufficient. Contrary to the state's contention, a pre-sentence report contained in the file did not give the false impression that Ellard's crime began as a friendly encoun-

16. At the evidentiary hearing, Ellard should be permitted, if he desires, to introduce evidence challenging the accuracy of the 1971 psychological report at the time of his parole. *Cf. Morrissey v. Brewer,* 408 U.S. at 489, 92 S.Ct. at 2604

(procedural due process requires that parolee may introduce evidence in parole revocation hearing). The state similarly should be permitted to present evidence supporting the validity of the report.

ter; the report clearly indicates that Ellard "threatened them with a knife and made them get into his car." Nor, despite the state's assertions, did Ellard's parole file inaccurately inform the Parole Board that Ellard's victims consented to sexual actions. Although the Alabama pre-sentence report stated only that "Ellard admits having sexual intercourse" with the murder victim, a report in Ellard's file that had been prepared by Georgia parole authorities accurately stated that Ellard had "abducted two victims in Alabama and ... raped each victim before murdering one and attempting to murder the other." As with the information regarding the escapes, the report of Ellard's crimes might have been more complete. The parole file, however, did inform the Board that Ellard had forcibly abducted his victims and sexually assaulted them prior to brutally murdering one and attempting to murder another. Thus, as with the escape evidence, the absence of a more detailed account of the crimes cannot be considered a departure from state guidelines unless the information was contained in "existing available records" that the Board should have obtained pursuant to Section 15–22–25(a).

If the district court does find that the additional information was in existing records that the Parole Board should have considered, the court must determine whether the absence of the evidence substantially undermined the Parole Board's decision to grant Ellard parole. In making this determination, the court should consider factors similar to those previously stated in connection with the psychological report.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED, and the case is REMANDED with instructions.

FAY, Circuit Judge, dissenting:

Most respectfully I dissent. In the first instance, I do not believe being transferred from a jail in one state to a jail in another state grants one the freedom discussed in *Morrissey, Gagnon* or *Vitek*. In the second instance, the Alabama Court of Criminal Appeals has ruled that the decision of the Parole Board was made without the information required under Alabama law. This decision was affirmed, on different grounds, by the Alabama Supreme Court. Under these circumstances I would find that the petitioner had no liberty interest and affirm the ruling of the district court.

To argue, as does the majority opinion, that because the Alabama law places restrictions on the authority of the Parole Board to revoke a parole the petitioner has a constitutionally protected liberty interest is circular reasoning. Alabama law declares that the decision of the Parole Board was *void* if based upon incomplete information required by the statutory scheme. Ala.Code § 15–22–40. It appears to me that the majority is now asking the federal district court to do exactly what has been done by the Alabama state courts. If the decision of the Parole Board was a nullity under Alabama law there existed no liberty interest and there can be no claim of denial of due process.